IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAKODA B.,[1]

    Plaintiff,

v.

COMMISSIONER of SOCIAL SECURITY,

    Defendant.

Case No. 24-cv-223-RJD[2]

## ORDER

**DALY, Magistrate Judge:**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.

## Procedural History

Plaintiff applied for SSI in August 2021, alleging an onset date of October 23, 2020. Tr. 10. After holding an evidentiary hearing on January 18, 2023, ALJ Robert Luetkenhaus denied the application. Tr. 20. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. Tr. 1. Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* the Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 10.

## Issues Raised by Plaintiff

Plaintiff makes the following arguments:

1. The ALJ failed to properly evaluate residual functional capacity ("RFC").

2. The ALJ failed to develop the record fully and fairly.

## Applicable Legal Standards

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work? 20 C.F.R. § 416.920(a)(4). An affirmative answer at step 1, step 4, or step 5 precludes a finding of disability. *Id*.

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not "reweigh evidence, resolve conflicts, decide questions of credibility," or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)(internal citations and quotations omitted). However, the undersigned does not act as a rubber stamp for the Commissioner. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There must be a "logical bridge" between the ALJ's conclusion and the evidence. *Hess v.*

*O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

### **The Decision of the ALJ**

The ALJ followed the required five-step analytical framework. He determined that Plaintiff had not engaged in substantial gainful activity since August 25, 2021. Tr. 12.

The ALJ found that Plaintiff has severe impairments of "major depressive disorder, with psychotic features; borderline personality disorder; generalized anxiety disorder; posttraumatic stress disorder; paranoia; degenerative changes to the lumbar spine; and obesity." Tr. 12. However, at Step 3, he found that Plaintiff does "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." Tr. 13. The ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace. Tr. 13.

The ALJ found that Plaintiff has the residual functional capacity to "[p]erform medium work as defined in 20 CFR §416.967(c) except the claimant can perform simple, routine, and repetitive tasks requiring only simple, work-related decision[s] and few changes in the routine work setting; and no more than occasional interaction with the general public." Tr. 15. Based on the testimony of a vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering his age, education, work experience, and residual functional capacity. Tr. 19.

### **The Evidentiary Record**

The Court reviewed and considered the entire evidentiary record in formulating this Order. The following summary of the record is tailored to Plaintiff's arguments.

1. **Evidentiary Hearing**

The ALJ asked Plaintiff to explain what keeps him from working. Plaintiff provided the following response:

> Generally speaking, the mental illnesses I have are basically crippling when it comes to trying to get to work every day and deal with any customers or coworkers. Getting myself out of bed is near impossible some days. And being able to function out, disassociating to the point that its dangerous for myself is very hard to do, even if I'm working alone. And it just becomes overwhelming and even when I worked for Wal-Mart where I was there for a couple of weeks, it was gradually breaking me down when I was not at work to the point that I became very suicidal…because I was so stressed and just completely locked down by everything.

Tr. 49. In response to questioning by his attorney, Plaintiff explained what happens when he disassociates:

> …my brain kind of checks out. I will have on occasions out of body feeling like I am not controlling myself, I am not there, but I'm watching it. Other times it is just my vision goes fuzzy. I can't focus. I can't like use my senses properly….on occasion it gets bad enough that I don't remember, you know, a decent amount of whatever I was doing. It's like the time kind of jumps and…I don't really have a control over…when I'm paying attention and when I'm not.

Tr. 61-62. These periods of disassociation occur "at least daily" and last anywhere from five minutes to several days. Tr. 61-62.

Plaintiff also testified that his back pain prohibits him from "standing or bending over a lot." Tr. 53. He can stand for an hour and possibly carry up to 30 pounds briefly. Tr. 54. He can sit for 90-120 minutes if he is able to "shift" but if he is stuck in a single position, he can only sit for 30 minutes. Tr. 53.

Vocational expert Jamie Hooper testified. Tr. 63. The ALJ posed the following

hypothetical to her:

> …a younger individual who has completed the equivalence of 12th grade education, who has no past relevant work experience [and who] retains the ability to do medium work but this individual can perform only simple, routine, and repetitive tasks, requiring only simple work-related decisions. With few changes in the routine work setting. And no more than occasional interaction with the general public.

Tr. 65. The expert testified that there are unskilled jobs that exist for this individual. Tr. 66. However, if the individual must be absent from work three times a month, or if the individual was off task for more than ten percent of the work day, those jobs could not be maintained. Tr. 68, 69.

### 2. Relevant Medical Records

Plaintiff was hospitalized for three nights related to suicidal ideation in October 2020. Tr. 304, 315. At admission, he reported overwhelming symptoms of depression and a history of sexual, physical, and emotional trauma. Tr. 304, 307. Plaintiff also reported a "linear association" between work and suicidal thoughts. Tr. 313.

From 2020-2022, Plaintiff received frequent mental health treatment at Centerstone of Illinois for major depressive disorder with psychotic features, bipolar disorder, and generalized anxiety disorder. Tr. 453, 504. He reported a history of sexual, physical, and emotional abuse. Tr. 425. From 2020-2021, he had varying levels of anxiety, hallucinations, insomnia, paranoia, and suicidal thoughts. Tr. 321, 323, 329, 333, 335, 337, 339, 343, 346, 353, 429, 647, 659, 661, 674, 679, 695, 745, 958. In March 2021, his clinician made the following notes regarding his "Job functioning":

> [Plaintiff] has difficulty holding a job. Client attempted two different jobs in the past year and reported needing special

> accommodations to work. [Plaintiff] had reported severe stress and disassociation during these times. Reported concerns due to anxiety and physical pain. [Plaintiff] is currently working at Walmart and reports although having a desire to leave at times that he feels that his job performance is doing well.

Tr. 431. Plaintiff's 2022 records from Centerstone reflect that he continued to report disassociation, paranoia, hallucinations, insomnia, and suicidal thoughts. Tr. 1210, 1222, 1260, 1288, 1306, 1356, 1429, 1459, 1497. In August 2022, Plaintiff was hospitalized for three nights related to hallucinations, suicidal thoughts, and increased depression. Tr. 1188.

In May 2022, Plaintiff underwent magnetic resonance imaging of his lumbar spine. Tr. 1035. The report stated that he had "chronic degenerative changes with annular fissuring at the levels of L3-L4, L4-L5, and L5-S1. There is a moderate sized focal central disc protrusion at the level of L5-S1." Tr. 1035. Plaintiff underwent physical therapy in April and May 2022. Tr. 1029-1033.

### 3. Consultative psychologists

Plaintiff's medical records were reviewed by Agency psychologists Melanie Nichols, Ph.d. and Howard Tin, Psy.D. Tr. 18. Dr. Nichols determined that Plaintiff could perform 2-3 step tasks; Dr. Tin found that he could perform 1-2 step tasks. Tr. 95, 104. The ALJ found neither of these opinions persuasive, stating that the opinions were not "supported by the narration or the record." Tr. 18. Both Dr. Tin and Dr. Nichols found that Plaintiff had moderate limitations in concentration, persistence, and pace. Tr. 93, 101.

## Analysis

Plaintiff argues that there are two bases for the Court to remand this case: 1) the ALJ failed to properly evaluate residual functional capacity; and 2) the ALJ failed to develop the record fully

and fairly by ordering a consultative exam or records review. The Court is persuaded by both arguments.

**Residual Functional Capacity**

Plaintiff contends that the RFC does not account for his moderate limitations in concentration, persistence, and pace ("CPP"). At step three, the ALJ found that Plaintiff has "moderate limitations concentrating, persisting, or maintaining pace." Tr. 13. In determining the RFC at step four, however, the ALJ merely stated that Plaintiff could "perform simple, routine and repetitive tasks requiring only simple, work-related decisions and few changes in the routine work setting." Tr. 15. The Seventh Circuit has repeatedly held that similar language in the RFC does not, by itself, account for moderate limitations in concentration, persistence and pace because "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Lothridge v. Saul*, 984 F.3d 1227, 1233-34 (7th Cir. 2021) (internal citations and quotations omitted).

Defendant makes no attempt to distinguish this case from *Lothridge*, instead citing seven published (and multiple unpublished) decisions by the Seventh Circuit and arguing that "[s]ince April 2019, the Seventh Circuit has affirmed almost every ALJ decision where the claimant had a moderate rating in the area of maintaining concentration, persistence, or pace and the residual functional capacity included evidence-based limitations, including limitations like simple repetitive tasks." Doc. 25, p. 5. This argument and the cases cited by the Defendant are not persuasive because four of the cases either included additional language (more detail than just "simple, routine, and repetitive tasks") or the evidence did not support additional limitations in the RFC (so any error by the ALJ was harmless). *Langley v. O'Malley*, 2024 WL 3649021, *4 (RFC

included "no fast paced or assembly-line production requirements"); *Moyer v. O'Malley*, 2024 WL 1411565, *2 (RFC included "no assembly line work" and "no more than occasional workplace changes"); *Streikus v. O'Malley*, 2024 WL 983568, *5 (claimant "does not point to any evidence demonstrating that he requires greater limitations than those identified in the RFC"); *Buttles v. Kijakazi*, 2023 WL 5220913, *3-*4 (RFC included "no more than two hour periods of concentration over an eight hour workday"); *Jozefyk v. Berryhill*, 923 F.3d 492, (claimant did not testify about restrictions in his concentration, persistence, and pace, nor did the medical record mention any); *Burmester v. Berryhill,* 920 F.3d 507, 511 (7th Cir. 2019) (evidence included statement from physician that claimant should be able to maintain concentration). The remaining three published decisions cited by Defendant do not even discuss whether the claimant's RFC accounted for moderate limitations in concentration, persistence, and pace. *Diaz v. Kijakazi*, 2023 WL 5275905 (7th Cir. Aug. 16, 2023); *Griffin v. Kijakazi,* 2023 WL 4400052 (7th Cir. Jul. 7, 2023); *Trzebny v. Kiljakazi*, 2023 WL 3480912 (7th Cir. May 16, 2023).

There are no "magic words" that must be included in the RFC, but both the RFC and the hypothetical posed to the vocational expert "must adequately account for the claimant's demonstrated limitations found in the record." *Streikus*, 2024 WL 983568, *4 (internal citations and quotations omitted). Here, Plaintiff testified that his episodes of disassociation prevent him from concentrating and maintaining pace at work and his mental health treatment records reflect that he sought and received treatment for the disassociation. The ALJ determined Plaintiff had moderate limitations in concentration, persistence, and pace, but failed to adequately account for the limitations in the RFC. Consequently, remand is necessary.

**Lack of consultative exam or expert review of records regarding Plaintiff's back pain**

The ALJ found that Plaintiff can perform medium work, which involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" and also involves a "good deal of walking or standing" or if it involves "sitting most of the time" then "some pushing and pulling of arm or leg controls" is involved. 20 CFR §416.967(c). Plaintiff testified that at most, he could carry "maybe 30 pounds maybe briefly." Tr. 54. The ALJ included no limitations regarding Plaintiff's ability to sit or stand or carry in the RFC and the hypothetical to the vocational expert, finding that Plaintiff could perform medium work. Plaintiff contends that because there was no consultative exam or review of his medical records, the ALJ failed to fully and fairly develop the record. In response, Defendant argues that (1) Plaintiff's attorney stated at the hearing that the record was complete and (2) Plaintiff had no evidence of physical limitations when he initially applied for disability. Doc. 25, p. 10. Defendant cites no authority in support of these arguments. *Id*.

Ultimately, it is the responsibility of the claimant to prove that he is disabled. 20 CFR §416.912(a). The ALJ is not required to order a consultative exam or records review, but may do so if the claimant's "medical sources cannot or will not" provide sufficient evidence regarding the claimant's impairments. 20 CFR §416.917. The ALJ has a duty to fully and fairly develop the record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Here, the ALJ noted the findings of Plaintiff's May 2022 lumbar spine MRI report: chronic degenerative changes with annular fissuring at multiple levels, along with a moderate sized focal central disc protrusion. Tr. 16. The ALJ also noted that on two occasions, Plaintiff underwent certain tests ("straight leg raising, femoral nerve stretch, Hoffman's and Babinski") that were

"negative" and a normal nerve conduction study. Tr. 16. There is no explanation in the record regarding the significance of these findings. The ALJ otherwise cited to records from Plaintiff's treatment for gender dysphoria and ultimately concluded that "by limiting the claimant to a range of medium work, the [ALJ] has adequately considered his subjective complaints and the objective medical evidence." Tr. 16, 18.

What is missing from the ALJ's decision is any sort of "bridge" from the MRI report and the test results to the ALJ's determination that Plaintiff could perform medium work. This missing bridge demonstrates the ALJ's failure to fully and fairly develop the record. *Cf. Bertaud v. O'Malley*, 88 F. 4th 1242, 1246 (7th Cir. 2023) "[b]ecause there was enough evidence before the ALJ to support his conclusion, the ALJ did not err by failing to develop the record further"). Remand is necessary.

## Conclusion

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for Supplemental Security Income is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: March 27, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**